**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **FARANAK SOLEYMANI,** |
| *Plaintiff,* |
| **v.** |
| **MARCO A. RUBIO,** *et al.*, |
| *Defendants*. |

No. 25-cv-4284 (TSC)

**MEMORANDUM OPINION**

Plaintiff Faranak Soleymani seeks to compel Defendants Marco Rubio and Kenneth Platek, in their official capacities as Secretary of State and Acting Director of the National Vetting Center, respectively, to adjudicate her F-1 nonimmigrant visa application. *See* Compl. at 1, ECF No. 1. Plaintiff seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, for allegedly unreasonable delay in processing her application. *See* Compl. ¶¶ 72–73, 111. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. *See generally* Mot. to Dismiss, ECF No. 5. For the reasons set forth below, the court will GRANT Defendants' Motion to Dismiss.

**I. BACKGROUND**

Plaintiff is a German citizen who studied in the United States from 2022 to 2024 under an F-1 visa. Compl. ¶¶ 43–45, 51. Seeking to renew her visa to continue her Ph.D. at the University of Oregon, she submitted a new application in April 2024. *Id.* ¶¶ 44, 55. In July 2024, after an interview at the U.S. Embassy in Frankfurt, Germany, a consular officer refused her application and informed her that her case would require "further administrative processing." *Id.* ¶¶ 45, 47.

The officer requested additional documents, which Plaintiff submitted in August 2024. *Id.* ¶¶ 45–46.  The State Department's Consular Electronic Application Center website indicates that Plaintiff's case was "[r]efused" and remains so while undergoing additional processing. *Id.* ¶ 47; ECF No. 1-2.  In December 2025, Plaintiff sued under the APA and Mandamus Act to compel adjudication of her application, alleging that the delay has caused her significant harm, including loss of funding, financial hardship, and emotional distress. *See* Compl. ¶¶ 52–56, 59.

## II.  LEGAL STANDARD

In opposing a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of demonstrating subject matter jurisdiction." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008).  The court must accept any "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court construes the complaint "liberally," but "need not accept inferences . . . unsupported by facts alleged in the complaint" or "legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

Under section 221(g) of the Immigration and Nationality Act ("INA"), a consular officer shall refuse a visa application if it appears from the application or supporting papers that the applicant is ineligible or if the officer knows or has reason to believe the applicant is ineligible. *See* 8 U.S.C. § 1201(g).  The consular officer must either "issue," "refuse," or "discontinue

granting" a visa application that has been "properly completed and executed" in accordance with the INA and its implementing regulations. 22 C.F.R. § 41.121(a). When refusing a visa under section 221(g), the consular officer may afford the applicant additional administrative process culminating either in issuance of the visa or confirmation of the prior refusal. *See Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/J6WR-HXLS. "There is no such thing as an informal refusal or a pending case once a formal application has been made." 9 FAM § 504.1-3(i); *id.* § 504.11-2(A)(b).[1]

### III.  ANALYSIS

Both the APA and the Mandamus Act require Plaintiff to "identify a legally required, discrete act that the agency has failed to perform." *Karimova v. Abate*, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (cleaned up); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Because Plaintiff fails to identify any further duty related to her already-refused visa application, dismissal is appropriate.

Although a consular officer must "issue" or "refuse" a visa once an application is executed, 22 C.F.R. § 41.121(a), Plaintiff has "already received" the "official refusal[s]" to which she is entitled, *Karimova*, 2024 WL 3517852, at *4. Plaintiff argues that a section 221(g) refusal followed by administrative processing is not "final," so the agency has not discharged its duty to timely adjudicate under section 555(b) of the APA. *See* Opp'n at 10–17, ECF No. 7; 5 U.S.C. § 555(b). But in *Karimova*, a unanimous D.C. Circuit panel squarely rejected that theory, holding

---

[1] Because the court concludes that an administrative record is unnecessary to decide the threshold legal questions presented by Defendants' motion to dismiss, it will waive compliance with Local Civil Rule 7(n), which applies only to cases "involving the judicial review of administrative agency actions." LCvR 7(n). Plaintiff alleges agency *inaction*; "if an agency fails to act, there is no 'administrative record' for a federal court to review." *Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).

that a refused application placed into administrative processing "remains officially refused," with no further duty to "conclude [the] matter" under section 555(b). *Karimova*, 2024 WL 3517852, at *2–3.

Plaintiff argues that the INA and its implementing regulations contain a "mandatory duty" to "timely adjudicate" her application, notwithstanding the refusal already entered. Opp'n at 21–30. The court disagrees. The agency satisfied any duties under the INA and its implementing regulations to process and adjudicate completed applications when "[a] consular officer reviewed her application, interviewed her, and ruled that no visa would be granted." *Karimova*, 2024 WL 3517852, at *4; *see, e.g.*, 8 U.S.C. §§ 1201(g), 1202(e); 22 C.F.R. §§ 41.106, 41.121(a); 9 FAM § 403.10-2(A). The same is true as to any duty to timely dispose of visa applications implied by the State Department's collection of fees under 22 C.F.R. § 41.107. Plaintiff's reliance on 8 U.S.C. § 1571(b)'s "sense of Congress" regarding timely processing of visa applications fares no better. *See* Opp'n at 7, 41. That language is precatory, not binding, *see Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021), and in any event, the consular officer already processed Plaintiff's application by refusing it under section 221(g). Finally, while 22 C.F.R. § 41.121(c) provides for reconsideration on a showing of new evidence overcoming ineligibility, "the possibility of reconsideration of a refusal does not mean that the refusal was not a refusal." *Alnaddaf v. Rubio*, No. 25-cv-2491, 2026 WL 555314, at *8 (D.D.C. Feb. 27, 2026) (quoting *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024)). "[T]he visa application remains officially refused" until the consular officer "re-open[s] and re-adjudicate[s] the applicant's case." *Karimova*, 2024 WL 3517852, at *2.

Plaintiff counters that *Karimova* is unpublished and therefore non-binding. *See* Opp'n at 17–20. Although "courts in this district are split on whether unpublished circuit decisions like

*Karimova* are binding," *Seifan v. Sweeney*, No. 25-cv-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting cases), this court has already concluded that it "must follow" *Karimova*. *Ariani v. Rubio*, No. 25-cv-349, 2025 WL 3653503, at *4 (D.D.C. Dec. 17, 2025) (quoting *Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025)). Unpublished D.C. Circuit decisions are not binding on future *Circuit* panels, *see In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011), but are nonetheless "precedential" if entered on or after January 1, 2002, *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013); *see* D.C. Cir. R. 32.1(b)(1)(B). Given "our hierarchical system of absolute vertical stare decisis," *Klayman v. Obama*, 805 F.3d 1148, 1149 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc), the court will not depart from a reasoned, unanimous decision of the Court of Appeals on a squarely presented question.

In any event, "[r]egardless of whether *Karimova* is actually binding, it is still a case decided by the Circuit that contains reasoning the Court finds persuasive." *Pour v. Rubio*, No. 25-cv-573, 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) (cleaned up). The fact that the State Department may "re-open and re-adjudicate" a refused application based on new information does not undo the refusal already entered or reset any statutory or regulatory duty to timely adjudicate. *See Karimova*, 2024 WL 3517852, at *2, *4–5. And critically, "[n]othing in federal law" restricts the "ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Id.* at *4. Holding otherwise would only incentivize consular officers to withhold administrative processing, to the detriment of visa applicants.

In sum, because Plaintiff has failed to allege that Defendants violated a clear, non-discretionary duty to act, her mandamus and APA claims must be dismissed.[2]

## IV.  CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss.  ECF No. 5.  A separate order will follow.

Date: May 14, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[2] Because the court dismisses Plaintiff's claims on this ground, it need not address Defendants' arguments that (1) Plaintiff lacks Article III standing to bring claims against Platek; (2) the doctrine of consular nonreviewability bars Plaintiff's claims; and (3) that any delay is not unreasonable under the factors set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).